UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LILIAN ALLEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 11 C 9259 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| BANK OF AMERICA, N.A., BAC HOME FINANCE LLC, U.S. BANK, N.A., PIERCE & ASSOCIATES, P.C., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., and WILSHIRE CREDIT CORPORATION, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Lillian Allen alleges in this lawsuit that Bank of America, N.A., BAC Home Finance LLC, U.S. Bank, N.A., Wilshire Credit Corporation, Mortgage Electronic Registration Systems, Inc. ("MERS"), and Pierce & Associates, P.C., violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Allen filed the suit *pro se* on December 29, 2011. Doc. 1. Bank of America, BAC Home Finance, U.S. Bank, and Wilshire (collectively, "Bank Defendants") moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), as did Pierce. Docs. 7, 27. Before the motions could be resolved, the court dismissed the case for want of prosecution. Doc. 39. The court reinstated the case on Allen's motion, at which point counsel had appeared on her behalf. Doc. 46. Instead of responding to Pierce's and the Bank Defendants' motions to dismiss, Allen filed an amended complaint. Doc. 50. Pierce again moved to dismiss under Rule 12(b)(6), arguing that the amended complaint failed to allege that Pierce had engaged in any specific wrongdoing. Doc. 59. The court granted the motion,

dismissed the claims against Pierce, and said that Allen could move for leave to file a second amended complaint. Doc. 61. Allen then filed a second amended complaint (henceforth, "the complaint") without first seeking leave, Doc. 62; the court granted leave retroactively on Allen's oral motion, without prejudice to Pierce's again moving to dismiss, Doc. 67.

The Bank Defendants have answered. Doc. 64. MERS, which the docket indicates has not been served with summons, has not appeared. Pierce has again moved to dismiss under Rule 12(b)(6). Doc. 70. The motion is granted in part and denied in part.

**Background**

On a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations but not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The court must construe those facts in the light most favorable to the party opposing dismissal. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in the non-movant's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts, as well as additional facts addressed in the Discussion section below, are set forth as favorably to Allen as permitted by the complaint and the other materials that must be considered on a Rule 12(b)(6) motion.

The underlying debt is a mortgage note on a property in Chicago that Allen owns. Doc. 62 at ¶ 6. The note originally was held by Miller Incorporated of Mount Lake Terrace, Washington, a non-party. *Ibid*. Since its issuance, the note has been owned and/or serviced at

various points by the Bank Defendants and MERS. *Id*. at ¶¶ 6-7, 9-10. Pierce, a law firm, represented U.S. Bank in a state court foreclosure action filed against Allen on September 10, 2009. *Id*. at ¶ 8. U.S. Bank filed an affidavit of transfer of the ownership of the note on September 14, 2009. *Id*. at ¶ 9. The state court entered a judgment of foreclosure against Allen in May 2010. Doc. 76 at 2. From 2009 through May 2012, Allen repeatedly requested that Defendants, including Pierce, verify and validate the debt. Doc. 62 at ¶¶ 11, 14-28. Defendants did not comply with any of those requests. *Ibid*.

"At various times between December 15, 2010 and April 2011, Defendants and/or their agents made several telephone calls and sent letters that Allen should pay up" on the mortgage debt. *Id*. at ¶ 12. In one call, Pierce told Allen, "Move out of your property right away. FDCPA does not apply to us." *Ibid*. Allen provides no further details regarding the content of the other calls, and does not describe the frequency of the calls beyond saying that there were "several" between December 15, 2010, and April 2011. *Ibid*. Other than the one specific call from Pierce, the complaint does not attribute any call or letter to any particular defendant; Allen's opposition brief, however, appears to suggest that Pierce made all of the calls. Doc. 76 at 5-6 ("Plaintiff indicated [in the complaint] that Defendant [identified earlier in the brief as Pierce] made several telephone calls at various times between December 15, 2010 and April 2011, demanding payment of mortgage debt of $239,920.00.") (citing Doc. 62 at ¶ 12). Allen asked Pierce for U.S. Bank's mailing address so that she could request verification and validation of the debt from U.S. Bank, but Pierce refused and instead told her to send it all correspondence intended for U.S. Bank. Doc. 62 at ¶ 13.

**Discussion**

Count I of the three-count complaint alleges that Pierce violated 15 U.S.C. § 1692g; Count II alleges a violation of § 1692d(5); and Count III alleges a violation of § 1692e(5). The claims are considered in turn.

**I.    Section 1692g – Validation and Verification of Allen's Debt**

Allen alleges that Pierce violated § 1692g in two ways: (1) by failing to send her the written notice required by § 1692g(a) within five days of its "initial communication" with her regarding the debt; and (2) by failing to validate the debt in response to her many requests while continuing to pursue collection, in violation of § 1692g(b). Although the factual allegations underpinning Allen's § 1692g claims are murky, largely due to her shifting accounts of what transpired, it is clear that the claims fail as a matter of law.

Section 1692g provides in relevant part:

> **§ 1692g. Validation of Debts**
>
> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1)    the amount of the debt;
>
> (2)    the name of the creditor to whom the debt is owed;
>
> (3)    a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4)    a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a

> copy of a judgment against the consumer and a copy of such verification and or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
> (b) Disputed debts
>
> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. …

15 U.S.C. § 1692g(a)-(b). Section 1692g(a) says that a debt collector communicating with a debtor must, either in the initial communication or within five days thereafter, provide the debtor with notice that she has thirty days to dispute the debt's validity, that the debt will be assumed valid unless she does so, and that if she disputes the debt within thirty days, the debt collector will cease pursuing collection until it obtains verification of the debt and mails it to her. The notice also must inform the debtor that she has thirty days to request the name and address of the original creditor, if different from the current creditor. Section 1692g(b) says that if, within thirty days of receiving the debt collector's § 1692g(a) notice, the debtor requests verification of the debt and/or requests the original creditor's name and address, the collector must cease efforts to collect the debt until it sends the debtor such verification and/or the original creditor's name and address. *See generally McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 502-03 (7th Cir. 2008); *Sims v. GC Servs. L.P.*, 445 F.3d 959, 962-63 (7th Cir. 2006).

The complaint does not allege that Pierce either did or did not send Allen a § 1692g(a) notice. In its motion, Pierce suggests that it "likely" sent Pierce a § 1692g(a) notice in September 2009. Doc. 72 at 3 ("[g]iven the timing of the initiation of the [foreclosure] lawsuit, it is likely that Pierce's validation notice was sent to Plaintiff in September, 2009"). Pierce's suggestion, by itself, is irrelevant on a Rule 12(b)(6) motion. Allen's opposition papers "presum[e]" that Pierce sent a § 1692g(a) notice in September 2009, Doc. 74 at ¶ 4, and "[a]ssum[e]" that Pierce did so, Doc. 76 at 3. But a presumption or assumption is not an allegation, and, adding to the confusion, Allen's papers express doubt that Pierce sent her a § 1692g(a) notice in September 2009, Doc. 74 at ¶ 3 ("Plaintiff does not recall receiving any notice of validation from Defendant in September 2009."), and then affirmatively deny that Pierce ever did so, Doc. 76 at 5 ("[Pierce] did not provide such a notice"). Given this lack of clarity, the court asked Allen's attorney at a status hearing on October 24, 2012, for Allen's definitive position on whether she had received a § 1692g(a) notice from Pierce. The attorney said that Allen had not received a § 1692g(a) notice at any time. 10/24/2012 Tr. at 5-6. The court therefore assumes for purposes of this Rule 12(b)(6) motion the truth of Allen's submission that Pierce never her Allen a § 1692g(a) notice.

### A. Section 1692g(a)

A debt collector violates § 1692g(a) by not sending a § 1692g(a) notice along with or within five days of its initial communication with a debtor. *See McKinney*, 548 F.3d at 502. Pierce's filing of the foreclosure suit in September 2009, or its litigation of that claim to judgment in May 2010, was not an initial communication within the meaning of § 1692g(a). *See* 15 U.S.C. § 1692g(d) ("A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a) of this section."); *Beler*

*v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007) (explaining that § 1692g(d) means that "legal pleadings no longer need be preceded or accompanied by verification notices"). The initial communication, rather, occurred no later than December 15, 2010, when Pierce is alleged to have made the first of several calls or sent the first of several letters to Allen demanding that she pay her mortgage debt. Doc. 62 at ¶ 12 ("At various times between December 15, 2010 and April 2011, Defendants and/or their agents made several telephone calls and sent letters that Allen should pay up on a mortgage debt of $239,920.00."); Doc. 76 at 5-6 (asserting that Pierce "made several telephone calls at various times between December 15, 2010 and April 2011, demanding payment of mortgage debt of $239,920.00"). Because § 1692g(a) requires a debt collector to send a § 1692g(a) notice within "five days after the initial communication," Pierce's alleged § 1692g(a) violation occurred when that five-day period elapsed on December 20, 2010, or, if the term "days" refers to business days rather than calendar days, on December 22, 2010.*

The statute of limitations for FDCPA claims is one year. *See* 15 U.S.C. § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of

---

* The parties cite and the court could find no case addressing whether the word "days" in § 1692g(a) means calendar days or business days. While the distinction does not affect the disposition of this motion, the correct answer likely is calendar days. The FDCPA uses the unmodified word "days" four times, including in § 1692g(a), *see* 15 U.S.C. §§ 1692f(2), 1692g(a) & (a)(3), 1692p(a)(2)(c)(v)(III), and the term "business days" once, *see id*. § 1692f(2). The Supreme Court has suggested that where a statute uses the term "business days" in some provisions, the statute's use in other provisions of the unmodified word "days" is best interpreted to refer to calendar days. *See Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514 (1990) ("Interpreting the term 'days' in [one section of the statute] to mean business days instead of calendar days seems inappropriate and unnecessary because of the express and contrasting use of 'business day[s]' in [another provision of the same statute].").

competent jurisdiction, within one year from the date on which the violation occurs."); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730-31 (7th Cir. 2004). Allen did not file this suit until December 29, 2011, more than one year after Pierce's alleged § 1692g(a) violation. Because the alleged violation occurred outside the limitations period, the § 1692g(a) claim fails as a matter of law. *See Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("While a statute of limitations defense is not normally part of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim.").

Allen appeals to the "continuing violation" doctrine in an effort to save her § 1692g(a) claim from the statute of limitations. The argument is that Pierce committed a "continuing violation" of § 1692g(a) by never getting around to sending a § 1692g(a) notice despite continuing to seek to collect the mortgage debt. Doc. 76 at 9. Allen has not cited, and the court has not discovered, any authority applying a continuing violation theory under § 1692g. Nor does Allen make a legal argument in favor of her novel theory. The Third Circuit has held that the continuing violation doctrine does not apply to § 1692g claims. *See Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x 112, 114-15 (3d Cir. 2011) ("[W]e do not believe that [claims under § 1692g(a)] are subject to a so-called 'continuing violations' rule that would reset the statute of limitations clock with each separate communication."); *Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009) (noting that "[g]enerally, our decisions have limited the continuing violation doctrine to the employment discrimination context" and refusing to extend the doctrine to § 1692g claims).

Because the continuing violation doctrine, if accepted in this context, would nullify Congress's decision to attach § 1692g(a)'s notice requirement only to the debt collector's "initial

communication" with the debtor, this court agrees with the Third Circuit. If Pierce failed to provide the § 1692g(a) notice within five days of its initial communication with Allen, then Pierce violated § 1692g(a) as of the end of that five-day period. But if Pierce persisted in failing to send the notice, that was not a "continuing" or "separate" violation because § 1692g(a) is violated only by a debt collector's failure to send the notice within five days of its initial communication with the debtor. There can be only one initial communication, and thus only one violation for failure to send a § 1692g(a) notice within five days of the initial communication; if any violation occurs, it occurs within five days of the initial communication. *See Peterson*, 430 F. App'x at 114 ("We agree with the common-sense conclusion reached by other courts that there can be only *one* 'initial communication' between a debt collector and a consumer, and any communication that follows the 'initial communication' is necessarily *not* an 'initial' communication.") (internal quotation marks omitted).

Because Pierce's alleged § 1692g(a) violation occurred outside the limitations period, Allen's § 1692g(a) claim is time-barred. And because the claim is time-barred, it is dismissed with prejudice. *See Cardenas v. City of Chicago*, 646 F.3d 1001, 1008 (7th Cir. 2011); *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189-90 (10th Cir. 2012); *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 353 (2d Cir. 1993).

### B. Allen's § 1692g(b) Claim

Allen's allegation that Pierce never sent a § 1692g(a) notice is fatal to her § 1692g(b) claim. As noted above, § 1692g(b) provides that if the debtor demands that the debt collector validate the debt within thirty days of receiving a § 1692g(a) notice, then the collector must cease all debt collection activities until it has provided the debtor with validation. The pertinent text in § 1692g(b) reads: "If the consumer notifies the debt collector in writing *within the thirty-*

*day period described in subsection (a) of this section* that the debt, or any portion thereof, is disputed, … the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, … and a copy of such verification or judgment … is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b) (emphasis added). The term "thirty-day period described in subsection (a) of this section" in § 1692g(b) means the "thirty days after [the debtor's] receipt of the [§ 1692g(a)] notice" from the debt collector. *Id*. § 1692g(a)(3). If the collector never sends the debtor a § 1692g(a) notice, then the thirty-day period never commences or occurs, which means that it is impossible for the debtor to demand validation within that (non-existent) thirty-day period. Under these circumstances, § 1692g(b)'s requirement that the collector validate the debt is never triggered. Such was the case here. Although Allen requested validation many times from September 2009 through May 2012, because Pierce never sent a § 1692g(a) notice, none of Allen's requests could possibly have come within thirty days of Allen's receipt of that notice, meaning that § 1692g(b) never imposed on Pierce a duty to validate. *See Settle v. Sw. Bank*, 2010 WL 2041366, at *2 (E.D. Mo. May 21, 2010) ("While Plaintiff relies on Subsection (b) of Section 1692g, Plaintiff fails to allege the minimum allegations necessary for such a claim. Subsection 1692g(b) is dependent upon the conditions precedent of Subsection (a) having occurred.").

Although this result follows inexorably from the statutory text, one could argue that it unsensibly allows a debt collector to circumvent § 1692g(b) by never sending a § 1692g(a) notice in the first place. *See Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) … gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting

activities, or they may cease all collection activities."). Such an argument misses the broader picture, which is that a debt collector, whatever it does, cannot circumvent § 1692g as a whole. If the collector fails to send a § 1692g(a) notice within five days of making an initial communication with a debtor, then the collector commits a plain violation of § 1692g(a). Thus, if a collector makes an initial communication to collect a debt, the debtor demands validation, and the collector fails to validate while continuing to pursue collection, the collector will have violated either § 1692g(a), by not sending the required notice within five days of the initial communication, or § 1692g(b), by timely sending the § 1692g(a) notice but then ignoring the debtor's validation request. Either way, the debtor has a good § 1692g claim. And so it was for Allen; assuming the truth of her allegations, Pierce violated § 1692g(a). Allen's problem is that she waited too long to file suit on that § 1692g(a) violation.

Allen's opposition papers say nothing about the complaint's allegation that Pierce failed to comply with her request for U.S. Bank's mailing address. Doc. 62 at ¶ 13. As noted above, § 1692g(b) provides that if, within thirty days of receiving a § 1692g(a) notice, the debtor requests from the debt collector the original creditor's name and address, the collector must cease efforts to collect the debt until it sends the debtor that information. The reason Allen's opposition papers say nothing about her spurned request for U.S. Bank's address is that U.S. Bank was not the original creditor; the complaint alleges that Miller Incorporated was the original creditor and that U.S. Bank acquired the note after it was issued. *Id*. at ¶¶ 6, 9. Accordingly, Pierce did not violate § 1692g(b) by not complying with Allen's requests for U.S. Bank's address. Moreover, for the reasons set forth immediately above, any such claim would fail because Pierce never sent a § 1692g(a) notice in the first place.

Because Allen's § 1692g(b) fails on the merits, it is dismissed. The dismissal is with prejudice for two reasons. The first is that Allen has had three chances to plead a viable § 1692g(b) claim against Pierce; having failed to do so, she will not be given a fourth opportunity. *See Agnew v. NCAA*, 683 F.3d 328, 347 (7th Cir. 2012) (holding that "a district court is not required to grant such leave [to amend a complaint] when a plaintiff has had multiple opportunities to state a claim upon which relief may be granted," and that the district court did not abuse its discretion in denying leave to amend where the plaintiffs had already had "three opportunities"); *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1322-23 (7th Cir. 1998) ("while it is possible that the deficiencies of the complaint could be cured by further pleading, the plaintiff has had three chances over the course of three years to state a claim and the district judge was not required to give her another chance"). The second reason is that Allen's opposition brief, perhaps recognizing that this was her last chance, does not even request a chance to replead. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend).

**II.     Section 1692d(5) – Harassment or Abuse**

Allen claims that Pierce's telephone calls and letters constituted harassment or abuse under § 1692d(5). Section 1692d provides in relevant part:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> \*   \*   \*

> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. § 1692d. The complaint's allegations regarding this provision are, in their entirety:

> At various times between December 15, 2010 and April 2011, Defendants and/or their agents made several telephone calls and sent letters that Allen should pay up on a mortgage debt of $239,920.00. For example, in one of the telephone call [*sic*] received by Allen, Defendant Pierce & Associates … told Allen, "Move out of your property right away. FDCPA does not apply to us."

Doc. 62 at ¶ 12. Allen's opposition papers attribute all calls to Pierce, Doc. 76 at 5-6, and add that she "received several telephone calls from [Pierce] requesting her to move out." Doc. 74 at ¶ 7. Allen maintains that one statement by Pierce—"Move out of your property right away. FDCPA does not apply to us"— "is and was annoying and harassing to Plaintiff." Doc. 76 at 6.

These allegations are insufficient to state a § 1692d(5) claim. Pierce's statement that the FDCPA did not apply to it almost certainly was false. *See Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) ("the [FDCPA] applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation"). That statement, however, cannot be said to have constituted "conduct the natural consequence of which is to harass, oppress, or abuse." 15 U.S.C. § 1692d. The same holds for Pierce's telling Allen that she should pay her debt or vacate the property that secured the debt. That communication told Allen that she owed a debt that Pierce wanted her to pay; without more, "[n]othing in the FDCPA prohibits a debt collector from contacting a debtor for the purpose of collecting a legitimate debt." *McVey v. Bay Area Credit Serv.*, 2010 WL 2927388, at *2 (N.D. Tex. July 26, 2010). And the "several" calls and letters from Pierce do not qualify as "repeated[]" or "continuous[]" within the meaning of § 1692d(5).

In so holding, the court acknowledges that "[o]rdinarily, whether conduct harasses, oppresses, or abuses [under § 1692d] will be a question for the jury." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). That is a general rule, not an iron-clad one, for "Congress has indicated its desire for the courts to structure the confines of § 1692d." *Ibid.* (citing S. Rep. No. 95-832, 95th Cong., 1st Sess., reprinted in U.S.C.A.A.N. 1695, 1698). The Seventh Circuit has not articulated a standard for evaluating § 1692d claims. The markers laid down by other circuits, however, show that Allen's allegations do not rise to the level of a § 1692d(5) violation.

For example, in *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994), the Ninth Circuit reversed the district court's grant of summary judgment to the defendant where the defendant had been "intimidating and threatening in her phone communications with" the plaintiff, had "described threats of garnishment accompanied by demands for overnight sending of payments," and had "called her at work after she had twice requested … that she not be phoned at her place of employment." *Id*. at 1516. The court concluded that "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct." *Ibid*. Likewise, in *Meadows v. Franklin Collection Service, Inc.*, 414 F. App'x 230 (11th Cir. 2011), the Eleventh Circuit held that a § 1692d claim could go to the jury where the defendant allegedly made "approximately 300 calls" over two-and-a-half years. *Id*. at 233. The conduct in *Fox* and *Meadows* was far more severe than the "several" calls and letters Pierce is alleged to have made here. Pierce's alleged conduct is more akin to the conduct in *Shuler v. Ingram & Assocs.*, 441 F. App'x 712 (11th Cir. 2011), where the Eleventh Circuit held that a debt collector's "five telephone calls to the Shulers [the debtors], including one successful contact with Mr. Shuler that lasted for less than five minutes and two voicemail

messages, do not amount to repeated or continuous attempts to annoy, abuse, or harass the Shulers" under § 1692d. *Id*. at 718.

This court has found no appellate case (the parties themselves cited no appellate cases interpreting or applying § 1692d) that weighs in favor allowing Allen to proceed on her § 1692d(5) claim, and one case (*Shuler*) that strongly favors dismissal. District court cases addressing similar circumstances favor dismissal as well. Although district court decisions are not precedential, well-reasoned district court opinions may be persuasive. *See Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005).

A recent opinion from this District articulated the following standard for evaluating § 1692d(5) claims:

> Whether repeated phone calls were made with intent to annoy, abuse, or harass depends on the volume and pattern of calls. Generally, there are two types of evidence presented to show an intent to harass under § 1692d(5). First, where a plaintiff has shown that he asked the collection agency to stop calling … and the collection agency nevertheless continued to call the plaintiff … . Second, the volume and pattern of the calls may themselves evidence an intent to harass.

*Kube v. Creditors Collection Bureau, Inc.*, 2012 WL 3848300, at *2 (N.D. Ill. Aug. 30, 2012) (citations and internal quotation marks omitted). Because Allen does not allege that she asked Pierce to stop calling or writing, she has a viable § 1692d(5) claim only if the "volume and pattern" of letters and calls support an inference of an intent to harass. This "volume and pattern" standard finds support in the Federal Trade Commission staff's commentary on the FDCPA, which define the term "repeatedly" in § 1692d(5) as "calling with excessive frequency under the circumstances," and the term "continuously" to mean "making a series of telephone calls, one right after the other." *Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50,097, 50,105 (Dec. 13,

1988). The staff commentary is entitled to the court's "respectful consideration." *Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1074-75 (7th Cir. 2011) (quoting *Carter v. AMC, LLC*, 645 F.3d 840, 843-44 (7th Cir. 2011)).

In the court's view, the standards set forth by the FTC staff and *Kube* reflect persuasive interpretations of § 1692d(5). Allen does not allege that she received multiple calls within a short period of time, and her allegations do not support the inference that the calls she did receive were made "with excessive frequency under the circumstances." It follows that Pierce's "several" calls and letters to Allen over a four- or five-month period do not constitute a § 1692d(5) violation.

This conclusion finds support in *McVey v. Bay Area Credit Service*, *supra*. *McVey* noted that:

> courts have found conduct to violate § 1692d where the debt collector made calls to debtors before 8:00 a.m. and after 9:00 p.m.; made calls to the debtors place of employment after being told not to do so by the debtor or employer; and used racial slurs, belligerent threats, profanity, and terms such as liar, deadbeat, and crook in communications with debtors and their relatives; made fifty-four calls to a debtor's workplace and left twenty-four messages on the workplace answering machine; [or] immediately called the debtor back after the debtor hung up on the debt collector.

2010 WL 2927388, at *2-3 (citations omitted). The court held that the far less severe conduct alleged by the *McVey* plaintiff—that "Defendant constantly and continuously places collection calls to Plaintiff seeking and demanding payment for an alleged debt" and that "Defendant often calls Plaintiff multiple times per week"—did not rise to the level of a § 1692d(5) violation. Likewise, in *Tamayo v. Am. Coradious International, L.L.C.*, 2011 WL 6887869 (D.N.J. Dec. 28, 2011), the court dismissed a § 1692d(5) claim where the plaintiff alleged that the defendant "repeatedly made harassing calls to Plaintiff during their collection efforts." *Id*. at *3. The court

reasoned that "[w]ithout more facts regarding the nature and extent of any harassing phone calls, the pattern of such calls, or the substance of any representations made during such calls, the Court cannot find that Plaintiff's claim under § 1692d(5) was sufficiently pled." *Ibid*.

The alleged misconduct here is no more severe than the conduct alleged in *McVey* and *Tamayo*, and the same result is warranted. Allen asserts that *Tamayo* is not relevant here because it "was a summary judgment ruling pursuant to Federal Rule of Civil Procedure 56." Doc. 76 at 7. But *Tamayo* was in fact a Rule 12(b)(6) case. And setting aside her attempt to undermine Pierce's reliance on *Tamayo*, Allen does not cite a single case that supports her § 1692d(5) claim. That claim is dismissed, and the dismissal is with prejudice for the reasons given above regarding Allen's § 1692g(b) claim.

## III. Section 1692e(5) – False or Misleading Representations

Finally, Allen claims that Pierce's alleged conduct violated § 1692e(5), which reads:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> \* \* \*
>
> (5)  The threat to take any action that cannot legally be taken or that is not intended to be taken.

15 U.S.C. § 1692e(5). The Seventh Circuit has articulated the following standard for evaluating § 1692e claims:

> [Section 1692e] prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." This is a broad prohibition, and while § 1692e has 16 subsections describing ways by which a debt collector could violate the FDCPA, that list is nonexhaustive, and a plaintiff need not allege a violation of a specific subsection in order to succeed in a § 1692e case. Despite the breadth of § 1692e's coverage, however, there are limits to its reach. … [A] statement

made by a debt collector that is technically false but in no way misleading does not run afoul of § 1692e. Instead, we use the "unsophisticated consumer" standard, as we do with all claims under § 1692e, and for purposes of § 1692e a statement isn't "false" unless it would confuse the unsophisticated consumer. The unsophisticated consumer may be uninformed, naive, and trusting, but is not a dimwit, has rudimentary knowledge about the financial world, and is capable of making basic logical deductions and inferences. Furthermore, because we have rejected the "least sophisticated consumer" standard, a [debt collector's] letter must be confusing to a significant fraction of the population.

… [W]e treat the question of whether an unsophisticated consumer would find certain debt collection language misleading as a question of fact. As an outgrowth of this practice, we have determined that there are three categories of § 1692e cases. The first category includes cases in which the allegedly offensive language is plainly and clearly not misleading. In cases of this nature, no extrinsic evidence is needed to show that the reasonable unsophisticated consumer would not be confused by the pertinent language. The second category of cases includes debt collection language that is not misleading or confusing on its face, but has the potential to be misleading to the unsophisticated consumer. If a case falls into this category, we have held that plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or deceptive. The final category includes cases involving letters that are plainly deceptive or misleading, and therefore do not require any extrinsic evidence in order for the plaintiff to be successful.

Thus, … [a § 1692e plaintiff] must convince us that [the debt collector's] statement regarding attorney fees is not only false, but would mislead the unsophisticated consumer. … [Finally,] materiality is an ordinary element of any federal claim based on a false or misleading statement, and we determined that § 1692e claims are no exception to this requirement. Therefore [the plaintiff] must also demonstrate that [the debt collector's] language constituted a *materially* false statement.

*Lox v. CDA, Ltd.*, 689 F.3d 818, 821-22 (7th Cir. 2012) (citations and some internal quotation marks omitted). Although § 1692e is broad, with its sixteen nonexhaustive subsections, Allen limits herself to arguing that Pierce violated one of the subsections, § 1692e(5), by calling her and saying: "Move out of your property right away. FDCPA does not apply to us." Doc. 62 at ¶ 12.

In moving to dismiss the claim, Pierce argues that its alleged statement does not violate § 1692e(5) because the statement did not threaten any action; recall that § 1692e(5) applies only where the debt collector makes a "threat to take any action that cannot legally be taken or that is not intended to be taken." Pierce's argument cannot prevail on a Rule 12(b)(6) motion. Drawing all inferences in Allen's favor, there plainly was an implicit threat lurking behind Pierce's statement. The FDCPA is meant to protect consumers from certain abusive practices by debt collectors, and in that light Pierce's assertion that it was exempt from the FDCPA could be understood by an unsophisticated consumer as ominous, with an unspoken "or else" tagged onto "Move out of your property right away."

It is true that when Pierce placed the call, it had obtained a judgment of foreclosure on behalf of U.S. Bank against Allen. Under Illinois law, however, a foreclosure judgment does not automatically entitle the lender (or its lawyer) to force the debtor to vacate the premises "right away." Rather, the general rule provides that an eviction can occur only thirty days after a foreclosure sale is confirmed. *See* 735 ILCS 5/15-1701(c) ("After the entry of a judgment of foreclosure and through the 30th day after a foreclosure sale is confirmed: Subsection (b) of Section 15-1701 [giving the mortgagor presumptive right to retain possession] shall be applicable."). The pleadings do not speak to any foreclosure sale having occurred. There are exceptions to the general rule, *see* 735 ILCS 5/15/-1701(b), but the pleadings do not establish the predicate of any such exception. Accordingly, at least for purposes of a Rule 12(b)(6) motion, Pierce did not have the legal right to accomplish its implicit threat of evicting Allen "right away." It follows that the § 1692e(5) claim survives dismissal. *See Morgan v. Mirand Response Sys.*, 2012 WL 555511, at *3 (C.D. Ill. Feb. 7, 2012) (holding that a § 1692e(5) claim survived dismissal where the debt collector told the debtor "if you do not take care of this today, we are

going to take further action," reasoning that the collector's reference to "further action" "could plausibly encompass 'action that cannot legally be taken or that is not intended to be taken'").

## Conclusion

For the foregoing reasons, Pierce's motion to dismiss is granted in part and denied in part. The §§ 1692d(5) and 1692g claims against Pierce are dismissed with prejudice. Allen may proceed with the § 1692e(5) claim.

November 6, 2012

_____
United States District Judge